466 P.2d 565

**CITY OF ALBUQUERQUE, Plaintiff-Appellant,**

v.

**STATE LABOR AND INDUSTRIAL COMMISSION of the State of New Mexico, James A. Price, Brother Raymond Ogden and Marvin G. Downer, Members of said Commission, and Ricardo M. Montoya, State Labor Commissioner, Defendants-Appellees.**

No. 8847.

Supreme Court of New Mexico.
March 16, 1970.

Poole, Tinnin & Danfelser, Henry G. Coors, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Ray H. Shollenbarger, Jr., Asst. Atty. Gen., Santa Fe, for appellees.

## OPINION

MUSGROVE, District Judge.

This is an appeal from the decision of the District Court of Bernalillo County affirming the decision of the State Labor and Industrial Commission of New Mexico.

The New Mexico Public Works Minimum Wage Act (§ 6–6–6 through 6–6–10, N.M.S.A. 1953 Comp.) charges the Labor Commissioner with the responsibility of determining the prevailing wage rates for workers employed on public works and authorizes the adoption of rules and regulations to carry out that function. Section 4.2 of the Rules and Regulations provides for standard job classifications and descriptions and further provides that such standards shall be adopted as regulations, filed as required by law, published and issued to all contributing and interested parties.

To determine the prevailing wages in a particular craft, it is the practice of the Labor Commission to survey the wage of one job in that craft and then to apply

a formula to establish the wage differentials for all other jobs within that craft for which standards have been adopted. For some time prior to February 11, 1969, the Labor Commissioner had used this method in determining the prevailing wage rates of truck drivers. The job of dump-truck driver (8 to 16 cubic yards) has been used as the base survey. The survey is made by checking the payroll records of contractors who contribute such information. According to § 2.5(o) of the Rules and Regulations, those who submit wage information must use only the job classifications appearing on the wage rate decision, use the exact nomenclature of each classification and where equipment is rated according to size, type or capacity, that size, type or capacity must be shown to support the rate paid. The Labor Commissioner is also authorized to make his own field survey if necessary. The payroll survey made by the Labor Commissioner for the months of September, October and November, 1968, indicate a wage rate of $2.36 per hour for dump-truck drivers (8 to 10 cubic yards). However, the Commissioner believed that this did not correctly reflect the prevailing wage. The record is silent as to what evidence caused that belief. The Commissioner then decided to use the job of water-truck driver (3,000 to 6,000 gallons) as the base job for truck drivers. On February 11, 1969, following a hearing to review the survey, the Commissioner determined the wage rate of water-truck drivers (3,000 to 6,000 gallons capacity) to be $3.18 per hour. To this wage rate the formula was applied to determine the wage rate for other truck drivers. The Commissioner, on February 11, 1969, issued an addendum to minimum wage decision No. 69–179 in which the minimum wage for some 21 different truck drivers was determined. The job of water-truck driver (3,000 to 6,000 gallons) was not included on that list. The wage of tank-truck driver (3,001 to 6,000 gallons) was $3.18 per hour; that of tank-truck driver (3,000 gallons or under) was $3.08 per hour; that of dump-truck driver (8 cubic yards and under 16 cubic yards) was found to be $3.10 per hour.

■ Appellant appealed to the State Labor and Industrial Commission, and on March 19, 1969 a hearing was held before the Commission. On May 2, 1969 the Commission issued its decision upholding the Labor Commissioner's wage decisions. Appellant appealed to the district court which affirmed the decision of the State Labor and Industrial Commission. The district court made no specific findings, only the general finding that appellant had failed to prove that the State Labor Commissioner acted in an illegal, erroneous or arbitrary manner. The State Labor and Industrial Commission sitting as an appeals board, made findings and conclusions in support of its decision. The review by the district court is confined to the record of the proceedings before the Board, and the findings of fact of the Board are binding upon the district court when supported by substantial evidence. Section 6–6–8.1 (D), N.M.S.A. 1953 Comp. Our review is confined to the same record.

■ Appellants first argue that there is no substantial evidence in the record to support the Board's finding that the job of water-truck driver (3,000 to 6,000 gallon capacity) had been adopted as a standard job classification and description. With this we agree. There is no evidence, having rational, probative force, in the record that a classification and description for a water-truck driver (3,000 to 6,000 gallons) had been made in accordance with the regulations adopted by the Commission. The Labor Commissioner, as any other administrative agency, is bound by its own rules and regulations. Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968); City of Albuquerque v. Burrell, 64 N.M. 204, 326 P.2d 1088 (1958); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012, (1959). There was evidence that a job description and classification of tank-truck driver (3,000 gallons or under) and tank-truck driver (3,001 to 6,000 gallons) had been formu-

lated but the Labor Commissioner was unable to say if such classifications and descriptions had been adopted as regulations and filed as required by law. If not properly filed, they are not valid as against anyone not having actual knowledge of their contents. See Maestas v. Christmas, 63 N.M. 447, 321 P.2d 631 (1958).

Findings numbered 5 and 9 of the State Labor and Industrial Commission were as follows:

"5. In arriving at a wage rate for truck drivers in Type A Construction the Labor Commissioner surveyed the job classification of 'tank truck driver 3000 to 6000 gallon capacity' or 'water truck driver 3000 to 6000 gallon capacity.' The Labor Commissioner made no distinction between tank truck driver and water truck driver when compiling this information."

"9. As a result of the wage survey, the Labor Commissioner established a prevailing base wage rate of $3.18 per hour for 'water truck driver 3000 to 6000 gallon capacity.' "

The inconsistency of these findings with the wage rates issued by the Labor Commissioner is at once apparent. If no job classification and description for water-truck driver (3,000 to 6,000 gallon capacity) had been adopted, then the contractors and others submitting payroll information could not use such a job since they were limited to using job descriptions appearing on the wage rate decisions. If the payroll information included that of tank-truck driver (3,000 gallons or under) and tank-truck driver (3,001 to 6,000 gallons) and the survey was made from that information, there is no legal basis for findings numbered 5 and 9. If a job description and classification for water-truck driver (3,000 to 6,000 gallon capacity) had been adopted and a survey of that job made, then logically a wage rate would have been determined for that job. None was made. According to the findings of the State Labor and Industrial Commission, tank or water trucks having a 3,000 gallon capacity were included in the survey and a base wage rate of $3.18 per hour was determined. However, in the wage rate decision issued by the Commissioner, the $3.18 per hour rate applied only to tank trucks (3,001 to 6,000 gallons). This is not such relevant, legal evidence that could be accepted by a reasonable person to support a conclusion. It will not meet the test of substantial evidence. Galvan v. Miller, 79 N.M. 540, 445 P.2d 961 (1968); see Wilson v. Employment Security Comm'n, 74 N.M. 3, 389 P.2d 855 (1963).

Orders of an administrative agency cannot be justified without a basis in evidence having rational, probative force. To act without justification is to act arbitrarily. See McWood Corp. v. State Corp. Comm'n, 78 N.W. 319, 431 P.2d 52 (1967).

The judgment of the district court appealed from is accordingly reversed and the cause remanded with direction to vacate the judgment and enter a new judgment disapproving the order of the State Labor and Industrial Commission affirming the decision of the Labor Commissioner and directing it to be vacated.

TACKETT and WATSON, JJ., concur.